### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | Hearing Date and Time: |
| | ) | December 8, 2011 at 10:00 a.m. |

### NOTICE OF MOTION

To:    See attached service list

**PLEASE TAKE NOTICE** on December 8, 2011 at the hour of 10:00 a.m., we shall appear before the Honorable Pamela S. Hollis, located in courtroom 644 of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, and then and there present the attached **Application of Adelman & Gettleman, Ltd. For Allowance of Final Compensation and Reimbursement of Expenses as Counsel to National Jockey Club**, a copy of which is hereby served upon you.

NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard Suite 1050
Chicago, Illinois 60604
312/435-1050

### CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing Notice and the document referenced herein have been served via ECF or e-mail as indicated, upon the persons listed on the attached service list, this November 21, 2011.

  /s/ Nathan Q. Rugg
Nathan Q. Rugg, Esq.

91568 v.2

## SERVICE LIST

Via ECF:

William T. Neary, Esq.
Kathryn M. Gleason, Esq.
Office of U.S. Trustee
Dirksen Federal Court House
219 S. Dearborn Street, Room 873
Chicago, IL 60604

Brad B. Erens, Esq.
Robert E. Krebs, Esq.
Lindsey D Dates, Esq.
Joseph M Tiller, Esq.
Jones Day
77 West Wacker, Suite 3500
Chicago, IL 60601
chicagobrr@jonesday.com
rkrebs@jonesday.com
ldates@jonesday.com
jtiller@jonesday.com

Kevin Murnighan, Esq.
Carey, Filter, White & Boland
33 West Jackson Blvd., 5th Floor
Chicago, IL 60604
kevin@careyfilter.com

Michael L. Gesas, Esq.
George P Apostolides, Esq.
Miriam R. Stein, Esq.
Barry A. Chatz, Esq
Joy E Mason. Esq.
Arnstein & Lehr, LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606-3910
mlgesas@arnstein.com
gpapostolides@arnstein.com
mrstein@arnstein.com
bachatz@arnstein.com
jelevy@arnstein.com

Jeffrey G. Close, Esq.
Chapman & Cutler, LLP
111 W. Monroe Street
Chicago, IL 60606
jclose@chapman.com

Joanne Lee, Esq.
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610
jlee@foley.com

Eric T. Stach, Esq.
Del Galdo Law Group
1441 S. Harlem Ave.
Berwyn, IL 60402
stach@dlglawgroup.com

Steven B. Towbin, Esq.
Ira Bodenstein, Esq.
Gordon E. Gouveia
Shaw Gussis Fishman Glantz
  Wolfson & Towbin, LLC
321 N. Clark Street, Suite 800
Chicago, IL 60610
ibodenstein@shawgussis.com
stowbin@shawgussis.com
ggouveia@shawgussis.com
mwestbrook@shawgussis.com

Lisa D. Johnson, Esq.
Holland & Knight, LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL 60603
lisa.johnson@hklaw.com

Jonathan E. Aberman, Esq.
Vedder Price
222 N. LaSalle St
Chicago, IL 60601
jaberman@vedderprice.com

Kenneth A Fedinets, Esq.
August A. Pilati and Associates, Ltd.
53 W Jackson Blvd., Suite 528
Chicago, IL 60604
kfedinets@aapltdlaw.com

Eileen M Sethna, Esq.
Querrey & Harrow
175 W. Jackson Blvd., Suite 1600
Chicago, IL 60604
esethna@querrey.com

Mitch Weinstein, Esq.
mweinstein@chuhak.com

Andrew B. Fuller
andrewfuller934@hotmail.com

Vipin R. Gandra
vipingandra@yahoo.com

91568 v.2

Matthew A. Swanson
mswanson@chicagobooth.edu

<u>Via Email</u>:

National Jockey Club
c/o Charles Bidwill, Patricia Bidwill
and Jeffrey W. Krol
jkrol@jwkrol.com

Andrea Clark Smith
PricewaterhouseCoopers LLP
225 S. Sixth St., Ste. 1400
Minneapolis, MN 55402
Email: andrea.clark.smith@us.pwc.com

91568 v.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | Hearing Date and Time: |
| | ) | December 8, 2011 at 10:00 a.m. |

**APPLICATION OF ADELMAN & GETTLEMAN, LTD.**
**FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF**
**EXPENSES AS COUNSEL TO NATIONAL JOCKEY CLUB**

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
*Attorneys for Debtor*

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     OVERVIEW OF SERVICES RENDERED IN THIS CASE . . . . . . . . . . . . . . . . . . . . 8
        A.      The Interim Applications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        B.      The Fifth Application Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    LEGAL SERVICES RENDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        A.  ADMINISTRATIVE MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        B.  ASSET SALES AND COLLECTION EFFORTS        . . . . . . . . . 11
        C.  PLAN OF REORGANIZATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        D.  FEE PETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        E.  INTER-TRACK PARTNERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        F.  GANASSI LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        G.  CLAIM ANALYSIS AND CLAIM OBJECTIONS . . . . . . . . . . . . . . . . . . 16
        H.  GLOBAL SETTLEMENT EFFORTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        I.  POST CONFIRMATION MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.     STANDARDS FOR REVIEW OF THE APPLICATION . . . . . . . . . . . . . . . . . . . . 18
        Form of Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                1.      Itemized Daily Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                2.      Telephone Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                3.      Meetings and Office Conferences . . . . . . . . . . . . . . . . . . . . . 20
                4.      Drafting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                5.      Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                6.      Minimum Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                7.      Lumping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.      BILLING JUDGMENT AND AVOIDANCE OF DUPLICATION OF SERVICES . . . 22
        A.      Individual Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        B.      Court Appearances and Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        C.      Appropriate Level of Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        D.      Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        E.      Document Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.     QUALIFICATIONS OF MOVANT; PRECLUSION OF EMPLOYMENT DUE TO
        ACCEPTANCE OF THIS CASE; AND COST OF COMPARABLE SERVICES . . . . 25

VII.    MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504 OF THE
        BANKRUPTCY CODE AND BANKRUPTCY RULE 2016; NOTICE . . . . . . . . . . . 29

VIII.   CONCLUSION AND REQUEST FOR ALLOWANCE AND PAYMENT OF INTERIM
        COMPENSATION AND REIMBURSEMENT OF EXPENSES . . . . . . . . . . . . . . . . . 30

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | Hearing Date and Time: |
| | ) | December 8, 2011 at 10:00 a.m. |

## APPLICATION OF ADELMAN & GETTLEMAN, LTD.
## FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF
## EXPENSES AS COUNSEL TO NATIONAL JOCKEY CLUB

TO:   THE HONORABLE PAMELA S. HOLLIS
      U.S. BANKRUPTCY JUDGE:

Now comes Chad H. Gettleman, Henry B. Merens, Nathan Q. Rugg, Steven B. Chaiken,

Erich S. Buck and Rebecca D. Rosenthal on behalf of Adelman & Gettleman, Ltd., (**"Movant"**),

counsel to National Jockey Club, an Illinois corporation, debtor herein (**"NJC"** or the

**"Debtor"**), and hereby submits the following application and moves for the entry of an order for

the allowance and payment of final compensation and reimbursement of ordinary and necessary

expenses incurred in connection therewith as counsel to the Debtor during the pendency of this

case under Chapter 11 of the Bankruptcy Code (the **"Code"**), pursuant to Section 330 of the

Code and Rule 2016 of the Federal Rules of Bankruptcy Procedures (the **"Bankruptcy Rules"**),

and in support thereof, respectfully states as follows:

## I.

## INTRODUCTION

This application (the **"Final Application"**) seeks a final award with respect to the first

four interim applications submitted by the Movant for the period of October 17, 2006 through

August 31, 2008 (the "**Interim Application Period**"), and further encompasses the thirty-seven

(37) month period from September 1, 2008 through October 31, 2011 (the **"Fifth Application**

**Period"**).  The Fifth Application Period reflects the continuing services by Movant in its

successful efforts to confirm a plan (the "**Plan**") premised on the global settlement the Debtor

achieved with the Official Committee of Unsecured Creditors (the **"Committee"**) and its

primary secured creditor, DII Northwest, LLC (**"DII"**).  The Plan was confirmed by the Court on

August 23, 2011.  Through the settlement and Plan, NJC and the Committee have generated the

only realistic means by which the non-insider general unsecured creditors will obtain a

distribution on their claims.

        For the first two years of this case, after it became apparent that the Debtor would not be

able to reorganize and remain an operating entity which could repay creditors' claims, the

Debtor actively sought to structure, and seek the approval of, a global settlement between the

Debtor, the Committee, DII and various insiders of the Debtor holding many millions of dollars

of unsecured claims in this case. The Debtor successfully met this goal on October 24, 2007,

when the Court entered an order (the **"Global Settlement Order"**) formally approving a global

settlement agreement dated August 24, 2007 (the **"Global Settlement Agreement"**), entered by

and among the Debtor, the Committee, DII and certain of the insiders.  The parties executed the

Global Settlement Agreement after months of difficult, and often frustrating and contentious,

negotiations and discussions. Following the filing of a motion to approving the settlement, the

Debtor, Committee and DII were engaged by certain objecting parties-in-interest in two months

of contested discovery and related hearings.

        The Global Settlement Agreement, has provided this estate with the highly beneficial, but

unusual, situation where a secured creditor is voluntarily releasing potentially sizeable portions

of its collateral, and substantial unsecured creditors are voluntarily subordinating their valid claims to those of the other unsecured creditors so as to provide them with a realistic means of recovering on their claims. Moreover, the secured creditor will be paying the necessary legal fees for most of the collection effort and insiders of the Debtor will be assisting the secured creditor in such liquidation efforts for no compensation. Since the entry of the Global Settlement Order, the Movant has worked with the settling parties and on behalf of the Debtor to ensure the liquidation and collection efforts move forward as planned. As evidenced by the extensive amount of services rendered by Movant during the Fifth Application Period, such efforts have been successful to date and have resulted in the confirmed Plan with funds dedicated to non-insider unsecured creditors to be collected by the estate.

Overall this Final Application seeks an award of compensation for the period of October 17, 2006 through and including October 31, 2011, consistent with the Movant's previous interim applications and, with respect to compensation received during the Fifth Application Period, is consistent with that certain Order Establishing Procedures for the Payment of Monthly Interim Compensation and Reimbursement of Expenses of Professionals entered in this case on February 8, 2007 (the **"Payment Procedures Order"**).

On March 30, 2007, Movant filed its first interim fee petition covering the four and one half month period from October 17, 2006, the date of the commencement of this case, through February 28, 2007 (the **"First Interim Application"**), which sought the interim allowance of $193,693.00 and reimbursement of expenses in the amount of $3,639.77. By Order of this Court dated April 26, 2007, Movant was awarded interim compensation and reimbursement of expenses pursuant to the First Interim Application in the amounts of $192,468.50 and $2,626.37, respectively (total additional payment after application of prepayment and monthly payments pursuant to Payment Procedures Order - $16,500.70).

On July 17, 2007, Movant filed its second interim fee petition covering the four month period from March 1, 2007 through June 30, 2007 (the **"Second Interim Application"**), which sought the interim allowance of $98,805.00 and reimbursement of expenses in the amount of $1,409.49. By Orders of this Court dated August 21 and 23, 2007, Movant was awarded interim compensation and reimbursement of expenses pursuant to the Second Interim Application in the aggregate amount of $97,885.25 and $1,409.49, respectively (total additional payment after application of monthly payments pursuant to Payment Procedures Order - $18,841.25).

On November 29, 2007, Movant filed its third interim fee petition covering the four month period from July 1, 2007 through October 31, 2007 (the **"Third Interim Application"**), which sought the interim allowance of $115,674.00 and reimbursement of expenses in the amount of $1,545.46.  By Order of this Court dated December 20, 2007, Movant was awarded interim compensation and reimbursement of expenses pursuant to the Third Interim Application in the aggregate amount of $115,674.00 and $1,545.46, respectively (total additional payment after application of monthly payments pursuant to Payment Procedures Order - $21,734.80).

On October 24, 2008, Movant filed its third interim fee petition covering the ten 10) month period from November 1, 2007 through August 31, 2008 (the **"Fourth Interim Application,"** and together with the First Interim Application, the Second Interim Application and the Third Interim Application, the **"Interim Applications"**), which sought the interim allowance of $56,489.20 (exclusive of voluntary reductions) and reimbursement of expenses in the amount of $591.66.  By Order of this Court dated December 20, 2007, Movant was awarded interim compensation and reimbursement of expenses pursuant to the Fourth Interim Application in the aggregate amount of $55,389.20 and $591.66, respectively (total additional payment after application of monthly payments pursuant to Payment Procedures Order - $10,198.24).  Movant hereby seeks final approval of the compensation and expense reimbursements previous awarded

by this Court on an interim basis in connection with the Interim Applications for the period of October 17, 2006 though August 31, 2008.

Movant subsequently submitted fee statements on a semi-monthly basis pursuant to the Payment Procedures Order. In an effort to reduce administrative costs and due to the variance of the amount of work required in any given month since the Fourth Interim Application, Movant often combined multiple months of services into a single payment request. None of the service parties who received the monthly statement objected to this practice, which the Movant submits benefits the estate by reducing time incurred to submit monthly invoices for minimal amounts owed. The monthly fees statements and the compensation received thereby is summarized below:

(a)     Thirteenth Request (September 1 – December 31, 2008) - 39.6 Hours:
        **Net Payment:** $10,272.92                    **Balance Unpaid:**     $2,531.56

(b)     Fourteenth Request (January 1 – April 30, 2009) - 20.8 Hours:
        **Net Payment:** $5,068.41                     **Balance Unpaid:**     $1,259.20

(c)     Fifteenth Request (May 1 – July 31, 2009) - 29.6 Hours :
        **Net Payment:** $7,207.90                     **Balance Unpaid:**     $1,799.00

(d)     Sixteenth Request (August 1 – November 30, 2009) - 30.5 Hours
        **Net Payment:** $7,292.88                     **Balance Unpaid:**     $1,802.10

(e)     Seventeenth Request (December 1, 2009 – May 31, 2010) - 26.8 Hours:
         **Net Payment:** $6,494.96                    **Balance Unpaid:**     $1,618.60

(f)     Eighteenth Request (June 1, 2010 – September 30, 2010) - 31.9 Hours:
        **Net Payment:** $6,922.66                     **Balance Unpaid:**     $1,722.60

(g)     Nineteenth Request (October 1, 2010 – December 31, 2010) - 50.0 Hours:
        **Net Payment:** $11,784.00[1]                 **Balance Unpaid:**     $2,946.00

(h)     Twentieth Request (January 1, 2011 – April 30, 2011) - 41.5 Hours:
        **Net Payment:** $9,382.22                     **Balance Unpaid:**     $2,332.70

---

[1] The Net Payment received for the Nineteenth Request inadvertently did not include $3.40 of expenses, payment for which the Movant did not receive and hereby waives.

**TOTAL PAYMENTS: $64,429.35          TOTAL BALANCE UNPAID:      $16,011.76**

In total, the Movant has received a total amount of $64,050.44 in payment of fees (corresponding to 80% payment of 274.10 hours of services rendered) and $378.91 expenses (100% payment) pursuant to the Thirteenth through Twentieth monthly payment requests (the **"Monthly Payment Requests"**).   The aggregate holdback related to the Monthly Payment Requests is $16,011.76.

The Movant did not submit further Monthly Payment Requests subsequent to the Twentieth Monthly Payment Request.  As part of this Application and in addition to the Monthly Payment Requests, the Movant seeks allowance of  $22,255.50 in fees for 79.3 hours of professional services rendered to the Debtor and $737.44 in expenses related thereto for the period of May 1, 2011 through October 31, 2011 (the "**Final Invoice Period**").

As such, and in total, Movant seeks in this Final Application (a) the allowance on a final basis of the fees and expenses awarded with respect to each of the Interim Applications, and (b) allowance on a final basis of compensation in the Fifth Application Period of (i) the amount of $80,062.20 and reimbursement of expenses in the amount of $378.91 related to the Monthly Payment Requests (total payment requested with respect to applicable holdbacks - $16,011.76) , and (ii) $22,255.50 fees and $737.44 expenses for the Final Invoice Period.  **Movant therefore seeks authority for the Debtor to pay a total of $39,004.70** ($38,267.26 in fees, plus $737.44 in expenses) to Movant for the Fifth Application Period.

Movant notes that the hourly rates charged by Movant remained unchanged since the commencement of this case, over five (5) years ago, notwithstanding Movant's respective rate increases on other matters that commenced at the beginning of the calendar years. Such rates also remain significantly less than Movant's current rates and continue to be substantially less

than the rates of many other bankruptcy practitioners of similar or even less experience in this

District. Copies of the eight (8) Monthly Payment Requests are attached hereto in chronological

order as <u>Exhibits A-H</u>, and are expressly made a part hereof. In addition, the Movant has

attached hereto as <u>Group Exhibit I</u>, which is made a part hereof, invoices by category for the

Final Invoice Period (together with <u>Exhibits A-H,</u> the **"Statement Exhibits"**). For each of the

Statement Exhibits, detailed statements of services rendered by category incurred during the

Fifth Interim Period are attached thereto, representing each of the categories described in Section

III below in order, as applicable.

As further discussed herein, during the Fifth Application Period, the NJC case continued

to present Movant with highly different responsibilities and challenges. Movant has addressed a

myriad of complex issues throughout the Fifth Application Period, including the resolution of

significant claims held by the Debtor's estate and formulation and confirmation of the Plan.

Despite these significant issues, Movant has assisted, and continues to assist, NJC's management

–and to the extent necessary, work with the Committee and DII and their respective counsel, as

contemplated under the Global Settlement Agreement– in analyzing, formulating and

documenting the means to conclude this case through the Plan in the best interests of all

interested parties.  In total, as reflected herein, Movant has expended 353.4 hours of professional

legal services during the Fifth Application Period, evidencing the continuing commitment

required of Movant to date.

## II.

## OVERVIEW OF SERVICES RENDERED IN THIS CASE

### A.      The Interim Applications

Each of the Interim Applications are part of the docket in the Chapter 11 Case (First

Interim Application [Docket No. 126], (Second Interim Application [Docket No. 167], (Third

Interim Application [Docket No. 238], (Fourth Interim Application [Docket No. 294]), and have

been approved by prior order of this Court.   Movant hereby seeks final approval of the

compensation awarded during the Interim Application Period pursuant to the Interim

Applications.

### B.      The Fifth Application Period

Between September 1, 2008 and October 31, 2011, Movant has taken steps to (i)

investigate analyze the assets of NJC and determine which of its liabilities, if any, may

potentially be setoff against such assets; (ii) advise the Debtor of its rights, duties and obligations

as a debtor in possession under the Code; (iii) perform such duties as were necessary to maintain

the viability of the Plan within the confines of Chapter 11 and the Global Settlement Agreement;

(iv) assist in the Debtor's dealings with its creditors, shareholders and other interested parties;

(v) analyze the options for, and effect a successful conclusion of, this Chapter 11 case through

the Plan; (vi) carry out and effect the terms of the Global Settlement Agreement and to work

with the parties thereto to liquidate and collect assets of the estate,(vii) assist the Debtor and its

court-approved special counsel to successful resolve significant litigation that resulted in a multi-

million dollar settlement in favor fo the Debtor; (viii) assisted DII with its prosecution of other

claims of the estate that DII has prosecuted in the Debtor's name pursuant to the terms of the

Global Settlement Agreement; and (ix) together with the Committee counsel, formulate and

confirm the Plan and accompanying disclosure statement.

Overall, the majority of the time expended during the Fifth Application Period was rendered by Nathan Q. Rugg in order to take advantage of his lower hourly rates, but significant experience in the complexities of this Chapter 11 case. Movant maintained Mr. Rugg's rates at the same level over the five years of the Chapter 11 Case despite his elevation from associate to member during that time, as well as the concomitant raise in his rates generally charged to the Movant's clients as a whole. The efforts required and expended by Mr. Rugg and the other members of Movant during the Fifth Application Period, and the results achieved by Movant to date, amply supports the allowance of compensation requested herein.

## III.

## <u>LEGAL SERVICES RENDERED</u>

For ease of reference, Movant has identified and set forth nine (9) categories of legal services rendered during the Fifth Application Period. Each category contains (i) a narrative of the matters involved; (ii) a general description of the tasks performed; (iii) detailed time records in chronological order, with each attorney's time described therein; (iv) the nature and purpose of such entries; and (v) the result achieved or benefit to the estate, as required by <u>In re Wildman</u>, 72 B.R. 700, 708 (Bankr. N.D. Ill. 1987). <u>See also</u> <u>In re Pettibone Corporation</u>, 74 B.R. 293, 301 (Bankr. N.D. Ill. 1987).

## FIFTH APPLICATION PERIOD
### (September 1, 2008 - October 31, 2011)

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 1.  Administrative Matters | 38.30 | $      9,996.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 2.  Asset Sales / Collection Efforts | 29.80 | $      8,801.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 3.  Plan of Reorganization | 105.90 | $     31,461.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 4.  Fee Petition | 34.90 | $     10,815.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 5.  ITP | 16.3 | $      4,868.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 6.  Ganassi Litigation | 69.30 | $     20,836.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 7.  Claim Analysis/Objections | 35.2 | $      9,803.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 8.  Global Settlement Efforts | 12.0 | $      3,540.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 9.  Post Confirmation | 11.70 | $      3,451.50 |

**TOTALS FOR FIFTH APPLICATION PERIOD:    353.40 HOURS        $103,574.00**

### A.  ADMINISTRATIVE MATTERS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 3.60 | $395 | $ 1,422.00 |
| NQR | 24.50 | $295 | $ 7,227.50 |
| SBC | 0.60 | $245 | $ 147.00 |
| RDR | 8.40 | $125 | $ 1,050.00 |
| JB | 1.20 | $125 | $ 150.00 |
| TOTAL | 38.3 | | $ 9,996.50 |

Movant expended approximately 38.3 hours during the Fifth Application Period

connection with the performance of the Debtor's duties under Section 1107 of the Code and the

numerous administrative and related matters arising herein.  These matters included the many

miscellaneous services that are usually required to be furnished on behalf of a debtor in Chapter

11 as well as many other matters that arose due to the complexity of the Debtor's affairs,

including the including the submission of operating reports and obtaining authority to destroy

old records and documents no long necessary for the administration of the estate.

### B.  ASSET SALES AND COLLECTION EFFORTS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 0.10 | $395 | $ 39.50 |
| NQR | 29.70 | $295 | $ 8,761.50 |
| TOTAL | 29.8 | | $ 8,801.00 |

Movant expended approximately 29.8 hours during the Fifth Application Period in

connection with collection efforts of the Debtor, which has an express duty arising from the

Global Settlement Agreement to assist DII with the collection and liquidation of assets on which

DII has a lien.  In return for this assistance, among other things, DII has agreed to provide the

estate a share (the **"Estate's Share"**) of the proceeds from the liquidated assets through a process and formula detailed in the Global Settlement Agreement.  This unique relationship, with concomitant support from the Committee, is at the heart of the Global Settlement Agreement and should allow the non-insider, unsecured creditors to collect a significant portion of their respective claims, which might not otherwise be possible.

To this end, Movant has assisted the Debtor in its direct efforts and indirect efforts as it works with DII and its counsel, as the case may be, to (i) obtain payment for rent for the use of barns NJC owned, located at the premises of Hawthorne Race Course, Inc. (**"HRC"**) consisting of 800 stalls, (ii) assist DII in prosecution of collection-related litigation and claims asserted in the Debtor's name consistent with the terms of the Global Settlement Agreement, and as necessary participate in related discovery in underlying litigation related thereto; (iii) further negotiate the amount of the Estate's Share, (iv) liquidate and obtain a valuation of the Debtor's membership interest in Inter-Track Partners, LLC (which is the subject of a separate category, discussed below), (v) attend to distributions the Debtor may receive in connection with shares it owns and oversee the attempt to sell such shares; (vi) and consult with the Debtor's principals in connection with the foregoing tasks.

## C. **PLAN OF REORGANIZATION**

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 5.10 | $395 | $ 2,014.50 |
| NQR | 99.10 | $295 | $ 29,234.50 |
| JB | 1.70 | $125 | $ 212.50 |
| TOTAL | 105.9 | | $ 31,461.50 |

Movant expended approximately 105.9 hours during the Fifth Application Period in connection with the issues related to the formulation, drafting, negotiation and the confirmation of the Plan.  These efforts included several iterations of the Plan, which was revised to respond to the comments from the United States Trustee office, creditors and parties in the interest, as well the drafting and updating of the Disclosure Statement, balloting and numerous court appearances.  Ultimately the Movant assisted the Debtor to obtain a confirmed Plan, which is the basis for future distributions to the creditors in this case.  Movant's efforts in this category required careful review of the Global Settlement Agreement and the Global Settlement Order, which largely provided the initial basis for the terms, procedure and operation of the Plan.

## D. **FEE PETITION**

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 5.20 | $395 | $ 2,054.00 |
| NQR | 29.70[2] | $295 | $ 8,761.50 |
| TOTAL | 34.9 | | $ 10,815.50 |

---

[2] Includes 10.0 hours for preparation of the Final Application. Movant avers that it expended over 12 hours in connection with the preparation of the Final Application, which is not set forth on the Statement Exhibits, but is seeking compensation for only 10 hours of such time.

Movant expended 34.9 hours during the Fifth Application Period, in connection with the

analysis of fee requests of other professionals in the Chapter 11 Case, and the preparation of the

Monthly Payment Statements, the Fourth Interim Application and this Final Application in full

compliance with the guidelines established by this District in the cases of In re Pettibone Corp.,

supra and In re Wildman, supra.  In that regard, Movant is entitled to receive compensation for

the preparation of the Fourth Interim Application and this Final Application in accordance

Section 330 of the Code as discussed in In re NuCorp Energy, Inc., 764 F.2d 655, 662 (9th Cir.

1985).  See also Matter of Hutter Const. Co., Inc., 126 B.R. 1005, 1012 (Bankr.N.D.Wis.

1991)(citing NuCorp for position that debtor's counsel is entitled to compensation for reasonable

time spent drafting fee application); and In re Pettibone, 74 B.R. at 304 ("This Court feels that

the better view is to permit professionals reasonable compensation for time spent in preparing

fee applications").  Not surprisingly, due to the complexities of this case and the substantial

commitment and services rendered by Movant throughout the lengthy Fifth Application Period,

the efforts needed to properly reflect such services that are the subject of this Final Application

have taken a significant time.

### E.    INTER-TRACK PARTNERS

| Attorney | Hours | Rate | Value | |
|----------|-------|------|-------|---|
| CHG | 0.60 | $395 | $ | 237.00 |
| NQR | 15.70 | $295 | $ | 4,631.50 |
| TOTAL | 16.3 | | $ | 4,868.50 |

Movant expended approximately 16.3 hours during the Fifth Application Period in

connection with the issues surrounding the Debtor's 25% former membership interest in and to

Inter-Track Partners, LLC, an Illinois limited liability company (**"ITP"**). Movant's efforts

involved working with counsel for DII to ensure payment of the Debtor's interest and the

valuation of same. The prior ITP motion for valuation was resolved through an established

valuation process agreed upon by the Debtor, ITP and DII after lengthy discussions and

compromise. The time expended at this category focused on necessary efforts to ensure payment

to the estate after the ITP interest was liquidated in full.

## F. GANASSI LITIGATION

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 4.80 | $395 | $ 1,896.00 |
| NQR | 62.40 | $295 | $ 18,408.00 |
| SBC | 1.40 | $245 | $ 343.00 |
| ESB | 0.60 | $295 | $ 177.00 |
| JB | 0.10 | $125 | $ 12.50 |
| TOTAL | 69.3 | | $ 20,836.50 |

Movant expended approximately 69.3 hours during the Fifth Application Period

connection with that certain litigation in the United States District Court for the Northern District

of Illinois, Eastern Division, entitled *National Jockey Club v. Floyd "Chip Ganassi and Chip

Ganassi Group, LLC*, Case No. 04-C-3743 (the **"Ganassi Suit"**). Under the terms of the Global

Settlement Agreement, the Debtor is entitled to 30% of the net proceeds of any recovery against

Ganassi through the Ganassi Suit.   Ganassi Group filed a counterclaim against the Debtor in the

Ganassi Suit (the "**Counterclaim**") and a proof of claim in the Chapter 11 Case premised on the

Counterclaim in the alleged amount of $28,000,000, Claim No. 8 (the "**Group Claim**").

After a jury trial, verdicts were entered in favor of the Debtor against Ganassi,

individually, on the Debtor's complaint and in favor of Ganassi Group against the Debtor on the

Counterclaim.  Both the Debtor and the Ganassi parties filed appeals to the United States Court of Appeals for the Seventh Circuit.

Movant assisted the Debtor and its special counsel to resolve the Ganassi claim and the Counterclaim, which resulted in an settlement ultimately approved by this Court.  The settlement ensured that the Debtor would realize significant funds from the Ganassi Suit, which is the largest single recovery obtained by Debtor under the Global Settlement Agreement.  Importantly, Movant directly participated in the settlement negotiations to obtain a withdrawal of the Group Claim in full and an agreed, liquidated payment of $4,500,000 that will result in a payment to the estate in excess $1,000,000 pursuant to the sharing arrangement established by the Global Settlement Agreement.

## G. CLAIM ANALYSIS AND CLAIM OBJECTIONS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 31.50 | $295 | $        9,292.50 |
| SBC | 0.40 | $245 | $            98.00 |
| JB | 3.30 | $125 | $          412.50 |
| TOTAL | 35.2 | | $        9,803.00 |

Movant expended approximately 35.2  hours during the Fifth Application Period in connection with the analysis of the claims submitted in the Chapter 11 Case, potential objections and defenses thereto, and in some cases the resolution of specific claims, including the withdrawal of the claims of the Town of Cicero in full.

## H.  GLOBAL SETTLEMENT EFFORTS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 12.00 | $295 | $        3,540.00 |
| TOTAL | 12 | | $        3,540.00 |

Movant expended approximately 12 hours during the Fifth Application Period in connection with implementation of the Global Settlement Agreement for the benefit of all creditors in this case after the entry of the Global Settlement Order (E.O.D. October 31, 2007). Thereafter, Movant has engaged in substantial discussions with counsel and principals of DII and the Debtor as part of an effort to obtain a universal resolution among DII, the Debtor, the Committee and HRC (along with certain of the Debtor's former business partners), which has asserted sizeable claims against the estate.

## I.  POST CONFIRMATION MATTERS

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 10.30 | $295 | $        3,038.50 |
| ESB | 1.40 | $295 | $           413.00 |
| TOTAL | 11.7 | | $        3,451.50 |

Movant expended approximately 11.7 hours during the Fifth Application Period in connection with various matters affecting the estate after the entry of an order confirming the Plan, including effecting the claim settlement process with the Town of Cicero and discussing post-confirmation obligations with principals of the Debtor.

## IV.

### STANDARDS FOR REVIEW OF THE APPLICATION

The Court need look no further than Local Rule 5082-1 and the long-established opinions

in In re Pettibone Corp. and In re Wildman for the applicable standard of review of the Fourth

Application.  The court in Pettibone, at 74 B.R. 301, stated:

> Under Sections 330 and 331 of the Code, professionals applying for fees must
> demonstrate *in writing* that their services were (1) actual; (2) necessary, and (3)
> reasonable.  Once services have been performed, Bankruptcy Rule 2016 requires
> that:
>
> A person seeking interim or final compensation for services, or reimbursement of
> necessary expenses, from the estate shall file with the court an application setting
> forth a *detailed* statement of (1) the services rendered, time expended and expenses
> incurred, and (2) the amounts requested.  (Emphasis in original.)
>
> These detailed applications establish the "actual", while an accompanying narrative
> explanation of the "how" and "why" establishes the "necessary".
>
> The primary objective of any fee petition is to reveal sufficient data to enable the
> Court to determine whether the services rendered were reasonable, actual and
> necessary.  In re Jensen-Farley Pictures, Inc., 47 B.R. 557 at 582 (Bankr. D.Utah,
> 1985).

While the court has wide discretion in reviewing a fee petition, such authority must be

dispensed "with great care and fairness," In re Wildman, 72 B.R. at 705, while keeping in mind

that the well accepted goal is to encourage and induce capable attorneys to practice in the

Bankruptcy Court. See In re Pettibone, 74 B.R. at 306.

In analyzing a fee petition, the court must determine "what the lawyer would receive if he

were selling his services in the market rather than being paid by court order." Matter of

Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992).  Moreover, as stated

in In re Boston and Maine Corporation, 776 F.2d 2, 10 (1st Cir. 1985), the court should focus on

the benefits to the estate and the quality of the performance of counsel in the context of the case

*as a whole*:

> Given these circumstances, it is important for a court to maintain "a sense of overall proportion," <u>Gabriel v. Southworth</u>, 712 F.2d 1505, 1507 (1st Cir. 1983), and not "become enmeshed in meticulous analysis of every detailed facet of the professional representation," <u>Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.</u>, 540 F.2d 102, 116 (3d Cir. 1976) ("Lindy II"). It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that B&M would not have enjoyed the success it did had its counsel managed matters differently. Fee-cutting "ideally should be tempered with a view towards the *need for the services at the time they were rendered*." <u>In re Casco</u>, 25 B.R. at 756 (emphasis added).

Some of the courts in this District have adopted the factors cited in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, (5th Cir. 1974) in determining whether the fees requested by professionals are actual, necessary and reasonable to a debtor's estate. <u>See</u> <u>In re Palladino</u>, 267 B.R. 825, 830-31 (Bankr. N.D. Ill.2001). The twelve <u>Johnson</u> factors are:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

Movant has endeavored to prepare this Final Application in accordance with the standards and guidelines outlined in <u>Pettibone</u>, <u>Wildman</u>, and submit that when evaluated by the factors set forth in those cases and/or in <u>Johnson</u>, this Final Application and the services rendered by Movant in the Fifth Application Period merit the full and final award of compensation and expense requested herein.

**Form of Application**

1.     Itemized Daily Entries - Each of the categories reflected contain detailed entries listing the subject activity; the date; the time spent; the nature of the services rendered; and the purpose for same.  Explanations are included to inform the reader of the circumstances giving rise to the activity.

2.     Telephone Conferences - Telephone conferences are detailed with disclosure of the topic of discussion, as well as the person called and reason therefor.  Telephone conferences are cost beneficial to the estate as they provide the most efficient way to handle the numerous matters involved.

3.     Meetings and Office Conferences - Movant spent considerable time in meetings and conferences as a means of performing the services required.  Where a meeting is described, the persons present and topics discussed are set forth.

4.     Drafting - The drafting of documents, letters, motions and orders is clearly delineated.  The complexity of the matters and the numerous parties involved often dictated many revisions.

5.     Legal Research - While the members of Movant have devoted substantially all their professional careers to the practice of commercial law, bankruptcy, insolvency and corporate reorganizations, legal research was required on numerous occasions in a case of this magnitude.  A lawyer who does not spend considerable time conducting legal research is doing a disservice to his client, and will soon find out that the rapidly evolving field of bankruptcy law is leaving him or her behind.  Indeed, the Seventh Circuit has recognized the need and requirement for constant research and preparation by attorneys, even in their own specialized areas of concentration.  See Continental Illinois Securities, 962 F.2d at 570 (when addressing the fee

request of securities lawyers in a class action securities lawsuit, the Court stated that "no one carries the whole of federal securities law -- not only the many detailed statutes and regulations but the thousands of decided cases -- around in his head, and a lawyer who tries to respond to a motion or brief without conducting fresh research is courting sanctions or a malpractice suit").

6.      <u>Minimum Time</u> - Movant does not apply a uniform amount of time to a particular activity.  The time entries herein have been kept on a tenth of an hour basis.  The Court should be sensitive, however, to the reality that bankruptcy cases do not lend themselves to meticulous time keeping.  Oftentimes, a lawyer's need to concentrate, the press of time and the emotion and energy involved, interfere with time keeping with exacting detail.  Great care has been utilized to keep reasonably accurate time.  Movant asks this Court to bear in mind the "big picture" context hereinbefore described by the First Circuit Court of Appeals in the <u>Boston and Maine</u> case.

7.      <u>Lumping</u> - Movant has endeavored to avoid grouping a number of unrelated activities into the same time entry.  The Court should, however, keep in mind that in a case of the complexity of this Chapter 11 case, meetings or telephone conferences will involve the discussion of numerous topics and several telephone calls may be made to a number of parties in rapid succession on one or more topic areas.  The entries elaborately describe each activity with identification of the party, the purpose of the activity and in many cases, the necessity thereof.  Such grouping is unavoidable, but the informative explanations herein serve to further describe and delineate the time spent.

**V.**

**BILLING JUDGMENT AND AVOIDANCE
OF DUPLICATION OF SERVICES**

As set forth in <u>In re Pettibone</u>, 74 B.R. at 303, Section 330 of the Code provides that

compensation for actual and necessary services makes the exercise of billing judgment

"mandatory" in bankruptcy fee petitions.  The estate should not bear the burden of duplication of

efforts which should be avoided by the exercise of good billing judgment.

Movant is a small firm, which by definition prevents any significant duplication of efforts.

Herein, Nathan Q. Rugg has performed the vast majority of services in connection with the

representation of the Debtor.  The extensive efforts required in this Chapter 11 case have, of

necessity, also involved other members of Movant.  Every effort has been made to delineate

specific tasks and in so doing, to prevent an unnecessary overlap in representation.  While

certain matters required joint consultations, duplication has been judiciously avoided.  When two

attorneys were needed, they were only involved due to the great complexity of a given matter,

the press of business, or if another member of the firm was handling a matter in some way

connected with another activity.  So, too, as with other matters, certain interoffice conferences

between partners of the firm or a partner and an associate occurred as were necessary and

beneficial for the estate.  The benefit to the estate from these activities resulted in an associate

being able to perform certain services which brought with it the lowered rates of the associate

and also the associate's greater availability to perform such services.  It is not realistic to expect

associates with limited experience in a case to operate as efficiently as a partner with greater

experience not only in a given case but in the practice of law.  Accordingly, some joint

participation in a case of this magnitude and activity is unavoidable.  In fact, however, such

overlap ultimately resulted in a more efficient and economic expenditure of time.

Practically speaking, a small firm such as Movant's does not have the luxury of having

more than one attorney generally handle any particular task.  So, too, in a case with issues as

complex as those presented to Movant here, at times certain problems required the collective

judgment of the attorneys in the firm.  Again, however, a review of the detailed statement of

services rendered by Movant in this Chapter 11 case reflects that duplication of services, albeit at

times necessary, was kept to an absolute minimum and in fact generated cost benefits to the

estate.  The appropriateness of the billing judgment of Movant can best be supported by the

following analysis of the factors set forth in In re Pettibone:

A.      Individual Responsibility - A review of this Fourth Application will show that a

minimal amount of conferring occurred in this Chapter 11 case.  When interoffice conferences

were required, they were required only to facilitate the coordination of effort and avoid the

duplication thereof.  The Court will find few lengthy interoffice conferences given the

complexity of this Chapter 11 case.  Movant has prepared this Fourth Application to comply

with the billing guidelines for office conferences as set forth in In re Adventist Living Centers,

Inc., 137 B.R. 692, 697 (Bankr. N.D. Ill. 1991).  In conformity with Adventist Living Centers,

Movant has billed only "active" attorney's time for office conferences.  However, if the office

conference constituted (i) a "status" conference wherein one attorney advises another as to

matters pending in a case and often assigns future work to be performed or (ii) a "strategy"

conference wherein one or more attorneys determine the course of action to be taken, then

Movant has billed for all attorneys involved in the conference.

B.      <u>Court Appearances and Meetings</u> - In over 300 hours reflected in this Final Application, there are few if any instances where more than one attorney attended a particular court appearance.  Meetings for particular matters have with rare exceptions been attended by only one attorney.  On certain occasions, it was necessary for more than one attorney to attend a meeting.  The use of more than one attorney was precipitated by the fact that such meetings usually led to the delegation of several different activities, or involved discussions concerning information that could best be gained secondhand.

C.      <u>Appropriate Level of Skill</u> - Herein, Mr. Rugg has had a significant role in the representation of the Debtor in those areas requiring the services of more experienced practitioners.   Where appropriate, however, the legal work was handled by other members of Movant to take advantage of lower billing rates.

D.      <u>Legal Research</u> - Most of the legal research was performed by members of Movant with lower hourly rates to further reduce the amount of fees in this Chapter 11 case.

E.      <u>Document Review</u> - A careful review of the detailed time entries will reflect that there are very few entries for one attorney reviewing the work product of another attorney.  In the rare cases where such examination appears, it was necessary as a result of the press of time and complexity of the matter involved.  It is both necessary and expected that such complex legal work will involve a certain amount of analysis by more than one attorney.  The Court should be advised, however, that these instances are few, and at no time was such a review simply a matter of interest.  Again, pursuant to the requirements of <u>Adventist Living Centers</u>, only the active attorney's time is billed in this Fourth Application for a document review conference.

## VI.

### QUALIFICATIONS OF MOVANT; PRECLUSION OF
### EMPLOYMENT DUE TO ACCEPTANCE OF THIS
### CASE; AND COST OF COMPARABLE SERVICES

Adelman & Gettleman, Ltd. was established in 1983  and has been listed in The

Martindale-Hubbell Bar Register of Preeminent Lawyers since approximately 1985. The firm is

the only Chicago bankruptcy boutique firm having its lawyers recognized in Illinois Leading

Lawyers Network, Best Lawyers in America, Woodward/White, World's Leading Lawyers by

Chambers and Partners, Legal Publishers 2002-2003, America's Leading Lawyers for Business,

Chambers and Partners, Legal Publishers 2004-2008, The Best Attorneys Network and Illinois

"Super Lawyers".

Movant has brought to bear on the problems of the Debtor the collective skill and

experience of the following members of Adelman & Gettleman, Ltd.:

CHAD H. GETTLEMAN

Chad H. Gettleman is a 1976 graduate of Marquette University Law School, and

is licensed to practice in the states of Illinois and Wisconsin.  In 1973, Mr. Gettleman obtained

his undergraduate degree in accounting from the University of Illinois and thereafter became a

non-practicing Certified Public Accountant.  Following his law school graduation, Mr.

Gettleman went to work for the U.S. Securities and Exchange Commission in the branch of

corporate reorganization of the Chicago Regional Office, which dealt with public interest cases

in a twenty-two state area under Chapters X and XI of the old Bankruptcy Act.  In 1979 Mr.

Gettleman left government practice and joined the then oldest bankruptcy boutique firm in

Chicago.  He has been involved in major bankruptcy cases since 1976 and has confirmed

numerous plans of reorganization.  Mr. Gettleman has devoted his entire professional practice

exclusively to the areas of commercial bankruptcy, insolvency, and reorganization since entering

practice in 1976.

In 1983, Mr. Gettleman formed the law firm of Adelman & Gettleman, Ltd. with Howard

L. Adelman.  Both Mr. Gettleman and Mr. Adelman remain the sole shareholder-principals of

the firm.  From 2004 to 2008, Mr. Gettleman was chosen by his peers as a member of the Illinois

Leading Lawyers Network for Bankruptcy and Workout Lawyers and has also been listed in

Chambers USA (2008) an the Best Attorneys Network in the areas of bankruptcy and

reorganization.  Most recently, in 2008 - 2011, Mr. Gettleman was elected by his peers as an

Illinois Super Lawyer in the area of bankruptcy and reorganization.  He is a co-author of

"Representing the Secured Creditor and Adequate Protection," Business Bankruptcy Practice,

2006 ed., 2008 Supp., Illinois Institute of Continuing Legal Education, and also "Inside the

Minds - Attracting and Retaining Clients", 2008 ed., Aspatore Books (A Thomson Reuters

Company). He is a member of the Illinois State Bar Association, Chicago Bar Association

(Bankruptcy and Reorganization Committee), American Bar Association (Section on

Corporation, Banking and Business Law), and the State Bar of Wisconsin.

NATHAN Q. RUGG

Mr. Rugg became a principal of the firm in January 2009, and has represented individual

and corporate debtors, secured lenders, creditors, purchasers, guarantors, shareholders, and

assignees for the benefit of creditors in workouts, liquidations, reorganizations, refinancings

adversary proceedings, claim litigation and commercial litigation.  He has been named by his

peers as a Rising Star in the Illinois Super Lawyers publication in the area of bankruptcy and

reorganization for 2009, 2010 and 2011.  Mr. Rugg is a Co-Chair for the Bankruptcy Court

Liaison Committee and serves on the Volunteer Attorney Panel in the Northern District of Illinois.  Mr. Rugg is a 1997 graduate of Dartmouth College, and graduated from the University of Illinois College of Law in 2000 *cum laude*. While attending the University of Illinois, Mr. Rugg served as an Associate Editor of the University's Elder Law Journal. He is a member of the Chicago Bar Association, Illinois Bar Association and the American Bankruptcy Institute.

## STEVEN B. CHAIKEN

Mr. Chaiken joined the firm in January 2007 and focuses his areas of practice in business bankruptcy, reorganization and commercial litigation.  Mr. Chaiken is a 1997 graduate of the University of Illinois, and graduated from the University of Illinois College of Law in 2000 *cum laude*.  Prior to joining the firm, Mr. Chaiken served as the general counsel for a telecommunications company in South Florida with annual revenues exceeding $150 million. Mr. Chaiken successfully assisted the company through a lengthy Chapter 11 which resulted in a confirmed plan of reorganization.  He has been named a Rising Star in the Illinois Super Lawyers publication for 2010 and 2011.

## ERICH S. BUCK

Mr. Buck, an associate attorney of Adelman & Gettleman, Ltd.,  joined the firm in November 2007 and focuses his areas of practice in business bankruptcy, reorganization and commercial litigation.  Mr. Buck is a 1997 graduate of Northwestern University and in 2001 graduated from the University of Iowa College of Law.  While attending the University of Iowa , Mr. Buck served as Managing Editor of the University's *Journal of Gender, Race & Justice*. Upon graduating law school, Mr. Buck served two years as law clerk to the Honorable Carol A. Doyle of the United States Bankruptcy Court for the Northern District of Illinois.  Prior to joining Adelman & Gettleman, Ltd., Mr. Buck was an associate at Reed Smith LLP (formerly

Sachnoff & Weaver, Ltd.), where his practice focused primarily on creditors' rights litigation.

He has been named a Rising Star in the Illinois Super Lawyers publication since 2009.

<u>REBECCA D. ROSENTHAL</u>

Ms. Rosenthal joined the firm in May 2007 and practices in the areas of business

bankruptcy, reorganization and commercial litigation. Ms. Rosenthal graduated *cum laude* from

Syracuse University in 1999 earning a B.S. in Accounting and is a Certified Public Accountant

(CPA). She graduated law school in 2008 from Loyola University Chicago School of Law.

During law school, Ms. Rosenthal earned a judicial externship with the Honorable Susan Pierson

Sonderby, United States Bankruptcy Judge for the Northern District of Illinois.

The following is a summary of the legal services rendered by Movant during the Fifth

Application Period:

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 19.40 | $395 | $ 7,663.00 |
| NQR | 314.90 | $295 | $ 92,895.50 |
| SBC | 2.40 | $245 | $ 588.00 |
| ESB | 2.00 | $295 | $ 590.00 |
| RDR | 8.40 | $125 | $ 1,050.00 |
| JB (paralegal) | 6.30 | $125 | $ 787.50 |
| TOTAL | 353.4 | | $ 103,574.00 |

As a result of the acceptance of employment as counsel to the Debtor for this Chapter 11

case, Movant was precluded from rendering services in other substantial legal matters.  Since the

commencement of this Chapter 11 case, Messrs. Gettleman and Rugg have at times spent a

significant portion of their time on matters involving the Debtor.  The expertise of Messrs.

Gettleman and Rugg have been required in light of the complexity of this Chapter 11 case.  The

hourly rates charged by Movant, which for the Fifth Application Period equate to a blended rate

of approximately $293 per hour, are more than commensurate with the skill and expertise

brought to bear on the duties and responsibilities of the Debtor, are significantly less than

Movant's current rates and are substantially less than the rates of many other bankruptcy

practitioners of similar or even less experience in this District.

## VII.

## MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504
## OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016; NOTICE

Except with respect to the sharing of compensation authorized under Section 504(b) of the

Code, Movant has not shared or agreed to share any award of fees received in connection with

this Chapter 11 case with any person, firm or entity.  There does not exist any agreement or

understanding between Movant, associates or employees, and any other person, firm or entity

with respect to the sharing of compensation herein.

As evidenced by the Certificate of Service filed herein by Movant, Movant has given at

least 17 days written notice of this Final Application to all parties appearing on the Official

Service List used in this Chapter 11 case, including the office of the U.S. Trustee, all counsel of

record, Committee counsel and counsel for DII.  Pursuant to Bankruptcy Rules 2002(a) and (i),

9006 and 9007 Movant hereby requests that this Court allow such reduced notice of this Final

Application to be filed with the Committee in lieu of service to all creditors in this Chapter 11

case. Movant submits that such notice is adequate under the circumstances, and requests that no

further notice be required.

## VIII.

## CONCLUSION AND REQUEST FOR ALLOWANCE
## AND PAYMENT OF INTERIM COMPENSATION
## <u>AND REIMBURSEMENT OF EXPENSES</u>

For the above and foregoing reasons, in consideration of the time and labor required and performed in this Chapter 11 case; the experience, reputation and ability of Movant, and the results achieved; Movant respectfully requests approval on a final basis of all compensation requested for the Interim Period and the Fifth Application Period, and payment of final compensation as counsel to the debtor in possession during the Fifth Application Period in the amount of $38,267.26 (and reimbursement of ordinary and necessary expenses incurred in connection therewith in the amount of $737.44) sought herein be determined to be reasonable and justified, and that the fees and costs requested be allowed, and for such other and further relief as is just.

Respectfully submitted,

ADELMAN & GETTLEMAN, LTD.

By:_____/s/ Nathan Q. Rugg_____
Nathan Q. Rugg, Esq.

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
*Attorneys for Debtor*

92509.2  11/21/11