**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that on **April 4, 2013 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Pamela S. Hollis of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Room 644, Chicago, Illinois, or whomever may be sitting in her place and stead, for an initial hearing on the **OBJECTION TO CLAIM FILED BY INTER-TRACK PARTNERS, L.L.C. (CLAIM NO. 12)**, a copy of which is attached hereto and hereby served upon you.

March 28, 2013

                                              JEFFREY W. KROL,

                                              Estate Representative of the Debtor

                                              By:   /s/   Nathan Q. Rugg
                                                     One of His Attorneys

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
312/435-1050
Attorneys for Estate Representative

Notice of Hearing - ITP:204110_1

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of this Notice of Hearing and document referenced herein were served upon the parties listed below on the service list below, via ECF, on March 28, 2013.

/s/ Nathan Q. Rugg
Nathan Q. Rugg

## **MAILING INFORMATION FOR CASE 06-13247**

The following is the list of parties who are currently on the list to receive email notice/service for this case.

## **SERVICE LIST**

Jonathan E Aberman    jaberman@vedderprice.com, ecfdocket@vedderprice.com
George P Apostolides    gpapostolides@arnstein.com, jbmedziak@arnstein.com
Ira Bodenstein    ibodenstein@shawfishman.com, cowens@shawfishman.com
John M Brom    jbrom@querrey.com, dkastner@querrey.com;dnuding@querrey.com
Barry A Chatz    bachatz@arnstein.com, jbmedziak@arnstein.com
Jeffrey G Close    jclose@chapman.com
Lindsey D Dates    ldates@jonesday.com, kmarino@jonesday.com;wdolan@JonesDay.com
Brad B. Erens    chicagobrr@jonesday.com, michellemiller@jonesday.com
Christine M. Fallara    cfallara@querrey.com, mcrawford@davidtcohenlaw.com;
    jvanheel@davidtcohenlaw.com
Kenneth A Fedinets    kfedinets@aapltdlaw.com, apilati@aapltdlaw.com;
    pmitchell@aapltdlaw.com
Andrew B Fuller    andrewfuller934@hotmail.com
Vipin R Gandra    vipingandra@yahoo.com
Michael L. Gesas    mlgesas@arnstein.com, blsutton@arnstein.com;jbmedziak@arnstein.com
Kathryn Gleason    USTPRegion11.es.ecf@usdoj.gov, Kathryn.M.Gleason@usdoj.gov
Gordon E. Gouveia    ggouveia@shawfishman.com, mwestbrook@shawfishman.com
Lisa D. Johnson    ljohnson740@gmail.com
Robert E. Krebs    rkrebs@jonesday.com
Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
Joanne Lee    jlee@foley.com, khall@foley.com
Joy E Mason    jelevy@arnstein.com
Kevin Murnighan    kevin@careyfilter.com
Eileen M Sethna    esethna@chuhak.com, rsaldivar@chuhak.com
Eric T Stach    stach@dlglawgroup.com
Miriam R. Stein    mstein@chuhak.com, kgord@chuhak.com
Joseph M Tiller    jtiller@jonesday.com
Steven B Towbin    stowbin@shawfishman.com

Notice of Hearing - ITP:204110_1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| _____ | ) | |

**OBJECTION TO CLAIM FILED BY INTER-TRACK PARTNERS, LLC**

TO: THE HONORABLE PAMELA S. HOLLIS,
U.S. BANKRUPTCY JUDGE:

NOW COMES Jeffrey W. Krol, solely in his capacity as disbursing agent and estate representative ("Estate Representative") of National Jockey Club, the debtor herein (the "Debtor"), by and through counsel, and for his objection (the "Objection") to the claim [Claim No. 12] filed by Inter-Track Partners, LLC ("ITP"), respectfully states as follows:

**I.     BACKGROUND**

1. On October 17, 2006 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this District, and from and after said date continued to manage and operate its property and affairs as a debtor-in-possession under the supervision of this Court pursuant to Sections 1107 and 1108 of the Bankruptcy Code (the "Chapter 11 Case").

2. An Official Committee of Unsecured Creditors (the "Committee") was appointed in the Chapter 11 Case.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Pursuant to an Order entered in the Chapter 11 Case [Docket No. 81], this Court set a deadline of March 30, 2007, by which creditors must file a proof of claim in the Chapter 11 Case (the "Bar Date").

5. On May 17, 2011, the Debtor and the Committee filed their Second Amended Joint Plan of Liquidation of National Jockey Club [Docket No. 394] (the "Plan"), which was confirmed by order of this Court [Docket No. 435] (the "Confirmation Order").

6. Pursuant to Article V of the Plan the Estate Representative has broad powers to implement the Plan, expressly including authority to object to claims or interests filed or otherwise asserted against the Debtor and its estate, and thereby have the power and authority to prosecute the present Objection.

## II. ITP ORIGINAL CLAIM AND RELATED MOTION PRACTICE

7. ITP is an Illinois limited liability company with its principal office located 8600 West North Avenue, Maywood, Illinois 60153.

8. As of the Petition Date, ITP was an "affiliate" of the Debtor as that term is defined in 11 U.S.C. § 101(2) and was therefore an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31).

9. As of the Petition Date the Debtor was 1of 4 members (collectively, "Members", and each a "Member") ITP, with each Member holding a with a 25% interest in and to ITP. The Members of ITP were the Debtor, Hawthorne Race Course, Inc. ("Hawthorne"), Maywood Park Trotting Association, Inc., and Balmoral Racing Club, Inc. (the latter two of which are under common ownership).

10. ITP is governed pursuant to that certain Operating Agreement of Inter-Track Partners L.L.C. (the "ITP Operating Agreement"). A copy of the ITP Operating Agreement is attached hereto as Exhibit A, and is made a part hereof.

11. ITP was organized to, among other things, "represent, consult with, render reports to, and act as agent or independent contractor for 'Inter-Track Wagering Location Licensees' as defined by the Illinois Horse Racing Act, and to represent the licensees' interest and pursue their goals in every manner as if their purposes and goals were for the purposes and goals of [ITP]." (See ITP Operating Agreement, Article 2.01).

12. The Debtor scheduled a claim for ITP in an unknown amount in its schedules filed in the Chapter 11 Case.

13. ITP filed a claim in the Chapter 11 Case on March 28, 2007 [Claim No. 12-1] (the "ITP Claim") based on certain fees and the "Certified Statutory Purse Recapture" for a total claim of $2,112,916.52. The ITP Claim is attached hereto as Exhibit B, and is made a part hereof.

### III. OBJECTION

#### A. ITP Violated the Automatic Stay to Manufacture the ITP Claim

14. As of the Petition Date, the Debtor maintained a receivable based on monies advanced to ITP in the approximate amount of $1,700,000 (the "Note"), plus interest (at 7%) due and owing for each of 3rd and 4th quarters of 2006 and the 1st and 2nd quarters of 2007. Each of the three other Members hold similar notes issued by ITP, all of which (including the Note) represent advances made by the Member and are subordinated to existing indebtedness to a secured third-party lender, MB Financial Bank (collectively, the "Sub-Debt").

15.     On a yearly basis, each of the Members applied for and pooled their "Off Track Betting Licenses" or "OTB Licenses" to operate a network of establishments in Illinois to conduct licensed off track betting on horse races.  The Debtor applied for the issuance of its 2007 OTB Licenses, but had its application denied by the Illinois Racing Board (the "IRB").  The Debtor did retain its membership interest in ITP for the entirety of 2006.

16.     Under the Illinois Horse Racing Act licensees such as the Debtor, who collect the bets (the pool of all bets on a race is the "Handle" for the race) and conduct the races, split a portion of all bets with the horsemen, who own, train and race the horses (the portion of the bets allocated to the horseman is referred to as the "Purse").

17.     An Illinois Court has summarized the genesis of licensees "recapture" of a certain percentage of the bets otherwise distributed to the horsemen as follows:

> The Act specifies the allocation of the total [bets] wagered. In 1995 the legislature decided to allow betting on races run at a different track and broadcast onto a screen at the host track [i.e. off track betting].  Horsemen persuaded the legislature to allocate a larger portion of the earnings from simulcast races to the horse men.  The licensees, in turn, persuaded the legislature to allow recapture of some of the horsemen's share [hereinafter, the "Purse Recapture"] if the [Handle] from live races fell by a specified percentage from 1994 levels.

Hawthorne Race Course, Inc. v. Illinois Racing Board, 851 N.E.2d 214, 216 (1st Dist. 2006).

18.     The IRB certifies the exact amount of Purse Recapture for a given year in or around January of the subsequent year; Purse Recapture amounts cannot be applied to the Purses payable in the subsequent year until certification by the Board. See 11 Ill. Adm. Code § 213.10. Thereafter, the ITP Members may, under the Illinois Horse Racing Act, either (i) retain the amount of the Purse Recapture in cash, (ii) or apply such amount against the Purse in the succeeding year, as a type of credit.  See Id.  In practice, the Members of ITP always chose the latter, applying the Purse Recapture to the amounts owed for the Purses in the subsequent year

19. ITP passed various resolutions since 1995 that required its Members to pay the amount of the Purse Recapture directly to ITP on a yearly basis, in order that ITP could show such Purse Recapture as additional income, thus improving its profitability on its financial statements.

20. However, while the Debtor and the other Members were required to pay the amounts of the Purse Recapture to ITP, ITP thereafter distributed the exact same amount back to each Member *on the same day,* often within a matter of hours.

21. Accordingly, these effectively neutral transactions among ITP and its Members with respect to the Purse Recapture had no economic impact on ITP or the Members.

22. In order to fulfill its obligations to ITP, the Debtor would withhold sums from its Purse accounts for each race held during a year in amounts equal to the Purse Recapture earned from its OTB Licenses (the "Withholding"). In fact the Debtor and the Members actually used the Withholding to fund its operations during the year, and in reality were never without use of such funds.

23. On or about December 15, 2006 –for the first time since the enactment of the 1995 Recapture legislation, and *after* the Petition Date– ITP resolved to reduce the Sub-Debt it owed to each Member by applying the 2005 Purse Recapture from all Members (the "December Resolution"). A copy of the ITP Board Meeting Minutes from December 15, 2006 are attached hereto as Exhibit C, and are made a part hereof.

24. Tim Carey attended the December 15, 2006 ITP meeting on behalf of Hawthorne, and "seconded" the motion to effect the December Resolution. See Exhibit C, Section 6. The Debtor voted against the motion. On information and belief, Hawthorne and ITP made this post-

#204102v1                                         5

petition December Resolution in response to the pending Chapter 11 Case and with intent to avoid payment of the Sub-Debt owed to the Debtor.

25. Prior to the December Resolution, the Debtor would have transferred an amount equal to the 2005 Purse Recapture to ITP, only to have ITP immediately transfer the exact same amount back to the Debtor typically within several hours. In addition, the Estate Representative understands and believes that while the Debtor did not make a distribution of the 2005 Purse Recapture at issue herein, neither did any other Member of ITP. Upon information and belief, no Member of ITP made a Purse Recapture payment to ITP for 2006.

26. After the Petition Date, ITP filed a motion in the Chapter 11 Case seeking to apply a setoff against the Debtor's estate [Docket No. 146, incorporated herein by reference] (the "Setoff Motion"). In the Setoff Motion ITP asserted a claim based on the 2005 Purse Recapture and sought to setoff the same (plus additional, smaller claims) against the balance remaining on the Note. In essence, the December Resolution implemented by ITP took what was a financially neutral event and manufactured a way to reduce its liabilities at the Debtor's expense.

27. ITP instituted the December Resolution *after* the Petition Date to create the purported right to setoff against the Note, which was a pre-petition asset of the Debtor and now an asset of the estate. ITP thereby violated the protections of the automatic stay under Sections 362(a)(3) and/or (a)(7) of the Bankruptcy Code.

28. This Court eventually entered an order denying the Setoff Motion [Docket No. 283] at a hearing on May 13, 2008, relying in part on the impropriety of ITP's post-petition actions.

### B.     ITP Refused to Provide Compensation for Debtor's Membership Interests

29.     On December 29, 2006, ITP filed a motion to modify the automatic stay [Docket No. 61] to allow it to exercise its rights under the ITP Operating Agreement to expel the Debtor from ITP and effectuate a buy-out of the Debtor's membership interest (the "Stay Relief Motion"). The Stay Relief motion is incorporated herein by reference.

30.     On March 27, 2007, the Court entered an order [Docket No. 123] granting the Stay Relief Motion, effective as of April 26, 2007. The order is incorporated herein by reference.

31.     ITP, however, thereafter did virtually nothing to effect the buy-out of the Debtor's membership interest in ITP. On February 29, 2008, in order to compel ITP to do so, the Debtor and DII were forced to file that certain Joint Motion of Debtor and DII Northwest LLC for an Order to Liquidate the Debtor's Interest in Intertrack Partners [Docket No. 256] (the "Valuation Motion"). The Valuation Motion is incorporated herein by reference.

32.     On March 18, 2008, ITP filed its objection to the Valuation Motion [Docket No. 262] (the "Objection"). The Objection is incorporated herein by reference.

33.     The Debtor, DII and ITP agreed to resolve the Valuation Motion and the Objection on the terms set forth in that certain Stipulation and Agreed Order entered by the Court on September 11, 2008. [Docket No. 262] (the "Stipulation"). The Stipulation is incorporated herein by reference.

34.     On February 6, 2009, the firm Duff & Phelps submitted its determination of the value of ITP pursuant to the terms of the Stipulation and the ITP Operating Agreement (the "Valuation"). Such Valuation took into account both the purported Purse Recaptured owed by the Debtor, the Note and the Sub-Debt and concluded that the fair market value of ITP as of

December 31, 2006 to be $4.7 million. The Valuation is attached hereto as Exhibit D, and is made a part hereof.

35. In connection therewith and pursuant to the DII Settlement Agreement, DII issued a demand to Hawthorne, ITP and the ITP Members on February 26, 2009, requiring a payment of $1,047,745 for the Debtor's membership interest (the "Membership Interest Claim"). A copy of the Demand Letter is attached hereto as Exhibit E, and is made part hereof.

36. Consistent with the terms of the ITP Operating Agreement, the Stipulation, the Objection and the Valuation, the Membership Interest Claim is inclusive of the Debtor's purported debt to ITP that is at issue in the ITP Claim. Accordingly, the ITP Claim should be disallowed in its entirety.

    **C.    ITP Manufactured a UCC Sale to Avoid Payment to the Debtor and DII**

37. ITP did not make any payment of the Membership Interest Claim to DII or to the Debtor, but rather continued to delay its obligation to pay the claim over the following year.

38. On August 31, 2010 (a Tuesday), the Debtor learned by reading a notice on page 16 of the Chicago Tribune, that substantially all of ITP's assets were scheduled to be sold at a non-judicial auction held by ITP's secured lender, MB Financial Bank, N.A. on September 15, 2010.

39. As a result of the proposed "friendly foreclosure" orchestrated by ITP, which would effectively preclude any payment by ITP on the Membership Interest claim, DII was forced to file a motion on September 2, 2010 [Docket No. 343] (the "Motion to Compel"), in the Chapter 11 Case seeking an order compelling ITP to pay the Membership Interest Claim. By reference, the Motion to Compel is incorporated herein.

40. Notwithstanding the Debtor's significant claims against ITP and effect the foreclosure sale would have on the Debtor's estate, ITP failed to provide either the Debtor or DII with actual notice of the sale.

41. On information and belief, the remaining ITP Members attended the UCC sale together with affiliates of the Members in order to affect a sale to "straw man" buyer controlled by one or more of the Members.

### D. ITP Eventually Settled and Paid the Membership Interest Claim

42. DII also attended the UCC sale as a bidder and thereby prevented the ITP from cleansing its assets through the friendly foreclosure.

43. Through its participation at the sale and the Motion to Compel, DII was able to negotiate a settlement with ITP for a payment of the Membership Interest Claim. Pursuant to the settlement, Hawthorne and the remaining ITP Members agreed to pay DII $900,000 in satisfaction of the Membership Interest Claim, which resulted in a payment to the Debtor's estate pursuant to the DII Settlement Agreement.

44. The payment for the Membership Interest Claim was finally received in October, 2010, approximately 3½ years after this Court granted the Stay Relief Motion to effect the buyout in the first instance.

45. Accordingly, the payment of the Membership Interest Claim is further evidence that the ITP Claim has been satisfied in full.

46. On several occasions, through counsel, the Estate Representative requested that IPT withdraw the ITP Claim. To date, ITP has refused to withdraw its claim thereby necessitating the filing of this Objection.

## IV.   CONCLUSION

47.   The ITP Claim was improperly conceived through post-petition actions in violation of the automatic stay and is invalid in the first instance.  Regardless, to the extent the claim ever had any validity, the claim was resolved through the Valuation process, as evidenced by the Valuation and by ITP's payment of the Membership Interest Claim.

48.   This Court should thus disallow the ITP Claim in its entirety.

**WHEREFORE**, Jeffrey W. Krol, as Estate Representative of National Jockey Club, hereby requests that this Court enter an Order disallowing ITP's claim in its entirety, and granting such other and further relief as is just and warranted in this case.

>   Respectfully submitted,
>
>   JEFFREY W. KROL,
>
>   Estate Representative of the Debtor
>
>   By:   /s/   Nathan Q. Rugg
>           One of His Attorneys

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
312/435-1050
Attorneys for Estate Representative