## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |
| | ) | **Hearing Date and Time:** |
| | ) | **February 20, 2014 at 10:00 a.m.** |

## NOTICE OF MOTION

TO:    See Attached Service List

PLEASE TAKE NOTICE that on **Thursday, February 20, 2014, at 10:00 a.m.**, we shall appear before the Honorable Pamela S. Hollis of the United States Bankruptcy Court for the Northern District of Illinois, in Courtroom 644 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF THE ESTATE REPRESENTATIVE FOR ENTRY OF A FINAL DECREE AND TO CLOSE BANKRUPTCY CASE**, a copy of which is hereby served upon you.

NATHAN Q. RUGG, ESQ.
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard
Suite 1050
Chicago, Illinois 60604
(312) 435-1050
Fax (312) 435-1059
**Counsel for the Estate Representative**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of this Notice

of Motion and document referenced herein were served upon the parties listed as set forth on the

service list below, via ECF or U.S. mail as indicated, on February 7, 2014.

/s/ Nathan Q. Rugg
Nathan Q. Rugg


## MAILING INFORMATION FOR CASE 06-13247

The following is the list of parties who are currently on the list to receive email notice/service for this case.

### SERVICE LIST – VIA ECF

| | |
|---|---|
| Jonathan E. Aberman | jaberman@vedderprice.com; ecfdocket@vedderprice.com |
| George P. Apostolides | gpapostolides@arnstein.com;  jbmedziak@arnstein.com |
| Ira Bodenstein | ibodenstein@shawfishman.com; cowens@shawfishman.com |
| John M. Brom | jbrom@querrey.com; dkastner@querrey.com; dnuding@querrey.com |
| Barry A. Chatz | bachatz@arnstein.com;  jbmedziak@arnstein.com |
| Jeffrey G. Close | jclose@chapman.com |
| Lindsey D. Dates | ldates@jonesday.com; karino@jonesday.com; wdolan@JonesDay.com |
| Brad B. Erens | chicagobrr@jonesday.com; michellemiller@jonesday.com |
| Christine M. Fallara | cfallara@querrey.com; mcrawford@davidtcohenlaw.com; jvanheel@davidtcohenlaw.com |
| Kenneth A. Fedinets | kfedinets@aapltdlaw.com;  apilati@aapltdlaw.com; pmitchell@aapltdlaw.com |
| Andrew B. Fuller | andrewfuller934@hotmail.com |
| Vipin R. Gandra | vipingandra@yahoo.com |
| Michael L. Gesas | mlgesas@arnstein.com; blsutton@arnstein.com; jbmedziak@arnstein.com |
| Kathryn Gleason | USTPRegion11.es.ecf@usdoj.gov; Kathryn.M.Gleason@usdoj.gov |
| Gordon E. Gouveia | ggouveia@shawfishman.com;  mwestbrook@shawfishman.com |
| Lisa D. Johnson | ljohnson740@gmail.com |
| Robert E. Krebs | rkrebs@jonesday.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Joanne Lee | jlee@foley.com; khall@foley.com |
| Joy E. Mason | jelevy@arnstein.com |
| Kevin Murnighan | kevin@careyfilter.com |
| Eileen M. Sethna | esethna@chuhak.com;  rsaldivar@chuhak.com |

Eric T. Stach                    stach@dlglawgroup.com
Miriam R. Stein                  mstein@chuhak.com;  kgord@chuhak.com
Joseph M. Tiller                 jtiller@jonesday.com
Steven B. Towbin                 stowbin@shawfishman.com

### SERVICE LIST – VIA U.S. MAIL

American Express Business Service
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606-7512

Brian R. Bidwill
810 College Avenue, Suite 2B
Kentfield, CA 94904-2532

Brian R. Bidwill
100 Tamal Plaza, Suite 120
Corte Madera, CA 94925-1176

Charles W. Bidwell, Jr.
22 Regent Wood Rd.
Northfield, IL 60093-2728

Charles W. Bidwell III
1921 Schiller Ave.
Wilmette, IL 60091-2321

Chicago Title Land Trust Co.
171 N. Clark St. #4LT
Chicago, IL 60601-3368

Chuhak & Tecson
c/o Mitchell D. Weinstein
30 S. Wacker Dr., 26th Floor
Chicago, IL 60606-7512

Continental Casualty Company
c/o Robert E. Dunne
R L Dunne & Co.
233 N. Michigan Ave., Suite 1780
Chicago, IL 60601-5801

Commonwealth Edison Co.
Bank One Plaza
35th Floor – East Side
Chicago, IL 60690

Ricesian Construction, Inc.
161 E. Chicago Ave. 41 DE
Chicago, IL 60611-2601

(NICOR) Northern Illinois Gas
Attn: Bankruptcy & Collections
P.O. Box 549
Aurora, IL 60507-0549

Altschuler, Melvoin & Glasser LLP
One S. Wacker Dr., Suite 800
Chicago, IL 60606-3392

Associated Bank National
Association
200 E. Randolph Street
Chicago, IL 60601-6436

Bertram T. Ebzery
321 N. Clark St., Suite 2200
Chicago, IL 60654-4614

CKM Partners, LLDC
8700 W. Bryn Mawr Avenue
Chicago, IL 60631-3512

Chip Ganassi Group, L.L.C.
c/o Chuck Gottschalk
One Oxford Centre, Suite 3550
Pittsburgh, PA 15219-1400

ComEd Company
Attn: Revenue Management Dept.
2100 Swift Drive
Oak Brook, IL 60523-1559

Cook County Collector
County Bldg., Room 301
118 N. Clark St.
Chicago, IL 60602-1309

Coresource
400 Field Drive
Lake Forest, IL 60045-4809

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

GMAC
P.O. Box 130424
Roseville, MN 55113-0004

Illinois Dept. of Commerce &
Economic
c/o James Newbold, SPAAG
100 W. Randolph St., 13th Floor
Chicago, IL 60601-3397

Laner Muchin Dombrow Becker
515 N. State St., Suite 2800
Chicago, IL 60654-4688

Mastercard
Corporate Mastercard Inquiries
c/o Harris Bank
P.O. Box 0755
Chicago, IL 60690-0755

NICOR
45 E. Palatine Road
Prospect Heights, IL 60070-1811

Patricia M. Bidwill
730 Glenview Road
Glenview, IL 60025-3264

Edward T. Duffy
21227 Andover Drive
Mundelein, IL 60060-9161

Illinois Dept. of Employment
Security
33 South State Street
9th Floor
Chicago, IL 60603-2808

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114

McGovern & Greene LLP
105 W. Madison St., Suite 406
Chicago, IL 60602-4680

Nash, Lalich & Kralovec
53 W. Jackson Blvd., Suite 1102
Chicago, IL 60604-3570

Pricewaterhouse Coopers LLC
One North Wacker
Chicago, IL 60606-2855

Illinois Department of Revenue
Bankruptcy Section
P.O. Box 64338
Chicago, IL 60664-0338

Mary Christine Bidwill
c/o Jeffrey W. Krol
8700 W. Bryn Mawr Ave., #810
Chicago, IL 60631

Meyer, Darragh, Buckler, Bebenek
& Eck
600 Grant St., Suite 4850
Pittsburgh, PA 15219-6194

PI Ventures, Inc.
Attn: Paul J. Ingraffia, Pres.
23754 Royal Worlington Drive
Naperville, IL 60564-8162

Record Copy Services
30 N. LaSalle
Chicago, IL 60602-2592

Schiff Hardin LLP
233 S. Wacker Dr., #6600
Chicago, IL 60606-6307

Timothy Rand
Midway Airport Concessionaries
5559-3 South Archer Ave., Unit 3
Chicago, IL 60638

Edwards Wildman
c/o David J. Fischer
Jeffrey L. Gansberg
225 West Wacker Drive
Chicago, IL 60606-1224

William V. Bidwill
Arizona Cardinals Football Team
8701 South Hardy Drive
Tempe, AZ 85284

Shauna Bidwill Valenzuela
2424 Myrtle Ave.
Hermosa Beach, CA 90254-2660

Teamsters Local 727 Benefit Funds
c/o Robert B. Greenberg
Asher, Gittler, Greenfield & D'Alba
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606-6942

Tishler & Wald, Ltd.
200 S. Wacker Dr., Suite 3000
Chicago, IL 60606-5815

Richlan Consulting
161 E. Chicago Ave., Unit 41DE
Chicago, IL 60611-2601

Sheridan & Pearlman
350 N. LaSalle St., Suite 900
Chicago, IL 60654-5136

Urban Real Estate Research Inc.
316 N. Michigan Ave.
Chicago, IL 60601-3777

William Engelter & Co.
20 N. Wacker Dr.
Chicago, IL 60606-0883

Patrick S. Layng
Office of the U.S. Trustee, Region 11
219 S. Dearborn St.
Room 873
Chicago, IL 60604-2027

Department of the Treasury-Internal
Revenue
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| NATIONAL JOCKEY CLUB, | ) | Case No. 06 B 13247 |
| an Illinois corporation, | ) | |
| | ) | Honorable Pamela S. Hollis |
| Debtor. | ) | |

**MOTION OF THE ESTATE REPRESENTATIVE**
**FOR ENTRY OF A FINAL DECREE AND TO CLOSE BANKRUPTCY CASE**

To:    The Honorable Pamela S. Hollis,
       U.S. Bankruptcy Judge:

NOW COMES Jeffrey W. Krol, solely in his capacity as disbursing agent and estate representative ("Estate Representative") of National Jockey Club, the debtor herein (the "Debtor"), by and through his undersigned counsel, pursuant to that certain Second Amended Joint Plan of Liquidation of National Jockey Club [Docket No. 394] (the "Liquidation Plan"), and for his motion ("Motion") for entry of a final decree and to close the above-captioned case pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3022-1 of the Local Rule of the United States Bankruptcy Court, Northern District of Illinois (the "Local Rules"), the Estate Representative respectfully states as follows:

**A.    FACTUAL BACKGROUND AND CASE HISTORY**

1.    The Debtor was incorporated in 1931 and operated Sportsman's Park in Cicero, Illinois exclusively as a horse racing venue until 1998. From 1999 through 2002, the Debtor operated Sportsman's Park as a joint horse and auto racing venue. Although the Debtor ceased operations at Sportsman's Park in 2002, it remained an organizational licensee licensed to conduct thoroughbred horse races under the Illinois Horse Racing Act of 19755, 230 ILCS 5/1 *et seq.*

2.      On October 17, 2006 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this District, and from and after said date and through the "Confirmation Date" (as hereinafter defined) continued to manage and operate its property and affairs as a debtor-in-possession under the supervision of this Court pursuant to Sections 1107 and 1108 of the Bankruptcy Code (the "Chapter 11 Case").

3.      An Official Committee of Unsecured Creditors (the "Committee") was appointed in the Chapter 11 Case.

4.      No trustee was appointed during the Chapter 11 Case.

5.      On May 17, 2011, the Debtor and the Committee jointly filed the Liquidation Plan, which was confirmed by order of this Court [Docket No. 435] (the "Confirmation Order") entered on August 23, 2011 (the "Confirmation Date").

6.      Pursuant to the terms of the Liquidation Plan, the Estate Representative was appointed and is authorized to liquidate the Debtor's assets and properties for the benefit of the creditors herein and wind up the affairs of the Debtor.

7.      The Liquidation Plan provides for the complete liquidation of all property in this estate under the direction of the Estate Representative and the distribution of the net proceeds thereof to creditors in accordance with the absolute priority rule and applicable law.

8.      Since the Confirmation Date, the Estate Representative has actively carried out his obligations pursuant to the Liquidation Plan, and has been working diligently to liquidate, maintain and preserve the value of the assets in this estate for the benefit of the creditors herein. As detailed further below, all administrative and priority claims have been paid in full, and as have all "Class 5" general unsecured creditors. Limited assets remain in the estate, which to the extent liquidated and sufficient to cover the applicable costs of the Estate Representative and the

professionals he retained to assist him pursuant to the Liquidation Plan, will be distributed to holders of "Class 6" subordinated claims.

9.      The Estate Representative has generated 100% distributions to the holders of general unsecured claims notwithstanding inherent complications arising from the complexity of the Debtor's affairs, the issues surrounding the property of the estate (including a blanket lien on the estate property held by the Debtor's former competitor), and the existence of disputed claims against the Debtor's estate that at one time exceeded $20 million.

**B.      GLOBAL SETTLEMENT AGREEMENT**

10.      In or around July 2006, DII Northwest, LLC ("DII"), an affiliate of the owners of a rival race track, bought all claims and liens against the Debtor held by the Debtor's former primary secured lending group led by Harris Bank NA, as agent, concerning all of its collateral interests (collectively, the "DII Claim").  Thus, as of the Petition Date, DII was a secured creditor with a lien on substantially all of the Debtor's assets.

11.      In light of the DII Claim and its lien on the majority of the Debtor's assets, and in order to maximize the ability to generate recoveries for all creditors in the Chapter 11 Case and avoid unnecessary, costly and protracted litigation, which likely would have eliminated any distribution to the unsecured creditors in this case, the Debtor engaged in lengthy discussions with the Committee, DII, the principals of the Debtor, and certain holders of subordinated notes issued by the Debtor.  These negotiations culminated with the "Global Settlement Agreement," which agreement was approved as amended by the Bankruptcy Court pursuant to an order entered on October 24, 2007 [Docket No. 235].

12.      Since the commencement of this Chapter 11 Case, and continuing through the Confirmation Date, the Debtor's objective herein was to manage its affairs in the best interests of

its creditors, and to explore various options for the repayment of the claims of its creditors, including, without limitation, through the formulation of the Global Settlement Agreement which provided the unsecured creditors herein the best ability for a potential recovery of all or a portion of their claims notwithstanding the substantial claims and liens held by DII.  Importantly, the Global Settlement Agreement provides that DII shall provide the Debtor the "Estate's Share" of the net proceeds of the liquidation of DII's collateral.  DII was willing to provide this Estate's Share due largely to the continued cooperation pledged by the Estate Representative, Patricia M. Bidwill, and Charles Bidwill III (collectively, the "NJC Principals"), to assist in liquidating the estate assets and pursuing legal claims held by the estate.

13.     The terms of the Global Settlement Agreement set the table for, and were largely incorporated into, the Liquidation Plan.

## C.     THE GANASSI LITIGATION

14.     On or about June 1, 2004, the Debtor commenced that certain litigation in the United States District Court for the Northern District of Illinois, Eastern Division, entitled *National Jockey Club v. Floyd "Chip Ganassi and Chip Ganassi Group, LL*C, Case No. 04-C-3743 (the "Ganassi Suit")

15.     The Debtor sought over $10,000,000 in damages and relief in the Ganassi Suit, which accordingly, constituted one of the key assets in the Chapter 11 Case. One of the defendants filed a counterclaim against the Debtor in the Ganassi Suit (the "Counterclaim") and a proof of claim in the Chapter 11 Case premised on the Counterclaim in the alleged amount of $28,000,000 [Claim No. 8] (the "Group Claim").

16.     The NJC principals actively participated in the Ganassi Suit, both as witnesses and through consultation with the Debtor's special counsel, continuing through all phases of the

litigation.  After a jury trial, verdicts were entered in favor of the Debtor against Ganassi on the

Debtor's complaint and against the Debtor on the Counterclaim.  Both the Debtor and the

Ganassi defendants filed appeals to the United States Court of Appeals for the Seventh Circuit.

17.    Before the appeals were decided, the Debtor entered into a Settlement Agreement

with the Ganassi defendants (approved by order of this Court entered on December 16, 2010

[Docket No. 381], which resulted in a significant payment to the estate under the Global

Settlement Agreement and the withdrawal of the Group Claim in full.

18.    Accordingly, it was not until December 2010, that the Debtor was able to fully

realize the possibility that general unsecured creditors may receive a meaningful distribution on

their claims.

**D.    CLAIMS AGAINST AND THE CLAIM OF THE HAWTHORNE ENTITIES**

19.    After finalizing the settlement of the Ganassi Suit, the assets of the estate that

presented the largest potential recovery related to two lawsuits against the Debtor's former

business partners and landlord (collectively, the "Hawthorne Entities"), *to wit*: (1) *DII Northwest*

*LLC v. Hawthorne Race Course, Inc., Hawthorne National, LLC, and the Estate of Thomas*

*Carey*, Adversary Case. No. 09-00740, filed in the Chapter 11 Case (the "Adversary

Proceeding"), and *DII Northwest LLC v. Hawthorne Race Course, Inc. and Suburban Downs,*

*Inc.*, Case. No. 2009-L-004870, filed in the Circuit Court of Cook County, Law Division

(collectively with the Adversary Proceeding, the "Litigation Claims").

20.    DII pursued the Litigation Claims in its name and in the name of the Debtor

consistent with the provisions of the Global Settlement Agreement, which also provided that if

DII prosecutes claims in the Debtor's name, then such collection of such claims shall be subject

to rights of setoff against the Debtor.

21.     After the Confirmation Date, the Hawthorne Entities filed amended proofs of general unsecured claims in the Chapter 11 Case seeking $13,073,651.00 [Claim No. 28-2] for Hawthorne Race Course, $2,176,060.00 [Claim No. 25-2] for Hawthorne National, $2,162,500.00 [Claim No. 26-2] for the Carey Estate; and $99,792.00 [Claim No. 27-2] for Suburban Downs, Inc. (collectively, the "Hawthorne Claims").  In addition, Inter-Track Partners, LLC ("ITP") maintained its claim against the Debtor in the approximate amount of $2.1 million (the "ITP Claim") notwithstanding the liquidation of the Debtor's membership interest in ITP and several requests by the Estate Representative's for ITP to withdraw its claim.

22.     The Estate Representative initiated settlement negotiations that contemplated a comprehensive settlement among the Estate Representative, DII and the Hawthorne Entities that would provide a payment with respect to the Litigation Claims and the withdrawal or compromise of the Hawthorne Claims and the ITP Claim against the estate.  After years of litigation, DII, the Hawthorne Entities and the Estate Representative engaged in nearly two months of settlement negotiations to simultaneously resolve both the Litigation Claims and the Hawthorne Claims.

23.     DII and the Hawthorne Entities, however, eventually reached a settlement that excluded the Estate Representative and the Debtor, and resulted in the payment to DII of $1.3 million, but (a) resulted in no cash payment to the estate of the Estate's Share, and (b) allowed the Hawthorne Claims to continue in effect against the estate without any reduction in amount. DII has represented to the Estate Representative that no net settlement proceeds existed to fund the Estate's Share after payment of its fees and expenses associated with pursuing the Litigation Claims.

24.     The Estate Representative filed a formal objection to the proposed settlement as prejudicing the estate and its *bona fide* creditors because the unresolved Hawthorne Claims against the estate (which as amended were grossly inflated to total approximately $18 million), whereas there was less than $1.5 million in the estate and the settlement contributed no additional funds to the estate.  The estate and its creditors were further prejudiced because the settlement and the unequal releases contemplated therein simply ended one battle with the Hawthorne Entities and left the Estate Representative to continue a second battle in objecting to the Hawthorne Claims (as well as the ITP Claim).  The costs and uncertainty of litigating these issues were thus foisted upon the Debtor's estate, while the Debtor did not receive any payment from the settlement.

25.     After briefing and hearing argument from counsel, this Court considered but ultimately overruled the objection filed by the Estate Representative [Docket No. 470].

**E.      OBJECTION TO CLAIMS FILED IN THE CHAPTER 11 CASE**

26.     After the Court approved the settlement between DII and the Hawthorne Entities, there remained approximately $20 million in disputed claims against the estate, asserted by the Hawthorne Entities, ITP and the Illinois Department of Commerce and Economic Opportunity (the "DCEO"), among other creditors.

**1.      Resolution of the DCEO Claim**

27.     Prior to the Petition Date the DCEO issued a $750,000 grant award to the Debtor.  The DCEO subsequently issued notices alleging the Debtor had not complied with the terms of the grant, prompting the Debtor to file a petition pursuant to Section 8(b) of the Illinois Grant Funds Recovery Act, 30 ILCS 705, 8(b), requesting a hearing and a determination that a recovery of the grant should not be permitted.

28.    The DCEO filed a proof of claim [Claim No. 7] in the Chapter 11 Case based on the findings of an administrative hearing officer pursuant to 56 Illinois Administrative Code, Ch. III, sec. 2605.200 and 30 ILCS 705/8 (the "Findings"), thereby asserting a claim in the total amount of $750,000.00 (the "DCEO Claim").

29.    Pursuant to that certain Motion of Estate Representative to Modify Automatic Stay, filed on March 29, 2012 [Docket No. 460], the Estate Representative obtained a court order modifying the provisions of 11 U.S.C. § 362 to allow the DCEO to enter a final recovery order, which triggered the Estate Representative's right to contest the DCEO Claim pursuant to a judicial review (on behalf of the Debtor) of the Findings and the resulting order for payment.

30.    Thereafter, through special counsel retained pursuant to Sections 5.2 and 5.3 of the Liquidation Plan (and subject to a fixed fee arrangement negotiated by the Estate Representative to help reduce the cost to the estate), the Estate Representative concurrently prepared for a judicial review of the Findings and explored a potential out-of-court resolution of the DCEO Claim.

31.    By negotiating with the DCEO and its counsel, the Estate Representative obtained a settlement that provided the DCEO with allowed a Class 5 general unsecured claim against the Debtor under the Liquidation Plan, entitled to immediate payment of $115,000 in full satisfaction of such claim.

32.    After notice and hearing, this Court approved the Estate Representative's settlement with the DCEO pursuant to a Stipulation and Agreed Order, entered on June 18, 2013 [Docket No. 531]. The Estate Representative thus effectively reduced the DCEO claim by 85% while incurring relatively minimal fees in obtaining the resolution.

**2.    Objections to Claims of ITP and the Hawthorne Entities**

33.     On March 27, 2013, the Estate Representative filed objections (and notices of hearing [Docket Nos. 495, 496, 497 and 498]) to each of the Hawthorne Claims (collectively, the "Hawthorne Claim Objections").  The Estate Representative filed his objection to the ITP on March 28, 2013 [Docket No. 499] (the "ITP Claim Objection").

34.     One day after the Estate Representative filed the ITP Claim Objection, ITP withdrew the ITP Claim in full, thereby reducing the universe of general unsecured claims by $2.1 million.  A resolution to the Hawthorne Claim Objections proved to be more time consuming and litigious.

### (a)     *Hodorowicz Documents*

35.     After the Confirmation Date, the Estate Representative sought access to certain information that the Hawthorne Entities labeled and protected as "Confidential" during discovery in connection with DII's prosecution of the Litigation Claims.

36.     The Estate Representative had previously requested from the Hawthorne Entities that they turn over all documents relating to the alleged defalcation by a former executive of the Debtor and certain of the Hawthorne Entities, including all documents previously at issue a motion to compel filed by DII while prosecuting the Litigation Claims (the "Hodorowicz Documents").  The Hawthorne Entities did not voluntarily turn over the Hodorowicz Documents to the Estate Representative.

37.     Accordingly, the Estate Representative was forced to file a motion pursuant to Bankruptcy Rule 2004, which resulted –after briefing and argument before this Court– in the entry of an order that compelled the Hawthorne Entities to produce the Hodorowicz Documents for review of the Estate Representative's undersigned counsel, only.

38.     As part of the Estate Representative's continued investigation of the Hawthorne Claim Objections and a potential subordination complaint against certain of the Hawthorne Entities pursuant to 11 U.S.C. § 510(c) (the "Subordination Complaint"), and other actions, his counsel analyzed the Hodorowicz Documents and concluded that the Hodorowicz Documents and the information contained therein gave rise to and/or provided additional support, both legally and factually, to the Subordination Complaint and the Hawthorne Claim Objections.

39.     Because the Hawthorne Entities would not agree to the Estate Representative's individual review and use of the Hodorowicz Documents in that regard, the Estate Representative was forced to file another motion in the Chapter 11 Case for unfettered review and use of the documents [Docket No. 485] (the "Hodorowicz Motion").

40.     After full briefing and argument from counsel for the Estate Representative and the Hawthorne Entities, on January 29, 2013, the Court entered an order granting the relief sought in the Hodorowicz Motion [Docket No. 494].

### 3.     Hawthorne Claim Objections

41.     Thereafter, the Estate Representative, along with the NJC Principals and legal counsel, continued discussions with the Committee and its counsel to determine whether an out-of-court resolution of Hawthorne Claim Objections was possible in light of the size of such claims, the limited assets of the estate, the settlement negotiations with the Hawthorne Entities to date and the desire to provide a meaningful distribution on the claims held by undisputed, general unsecured creditors.

42.     After careful deliberation, the Estate Representative determined that prosecuting the Hawthorne Claim Objections was necessary as the compromises discussed to date would only result in a 30% to 50% distribution to the Class 5 general unsecured creditors.

43.     By filing the Hawthorne Claim Objections and the ITP Objection, the Estate
Representative obtained immediate positive results, namely, a reduction of general unsecured
claims by nearly $5 million.  Specifically, ITP withdrew its $2.1 million claim in full;
Hawthorne Race Course reduced its claim by over $1.9 million; both Hawthorne National and
the Carey Estate reduced their claims by $662,500, each; and Suburban Downs, Inc. withdrew its
claim of approximately $100,000 in its entirety.

44.     After numerous hearings, lengthy additional briefing, and multiple arguments
before the Court, the Hawthorne Entities indicated that they would further withdraw certain
bases for their claims, and thereby reduce the total amount asserted against the estate.  Pursuant
to the Court's request, the Hawthorne Entities filed further amended claims on September 10,
2013, which again reduced the total amount of the Hawthorne Claims.

45.     In response, the Estate Representative both amended and updated the Hawthorne
Claim Objections [Docket No. 566, 567 and 568] to address the revised claims, and reestablished
settlement communications with the Hawthorne Entities.  The NJC Principals consulted with the
Estate Representative throughout the claim objection and settlement process, providing factual
analysis of the deficiencies in the Hawthorne Claims, providing evidentiary support for the
Hawthorne Claim Objections and consulting on litigation strategy.

46.     Following good faith and arms' length negotiations, the Estate Representative and
the Hawthorne Entities reached a compromise and settlement of the Hawthorne Claims and the
Hawthorne Claim Objections.  In summary, the settlement provided a single payment of
$525,000.00 in full satisfaction of the Hawthorne Claims, which were treated as a single Class 5
general unsecured claim against the Debtor under the Liquidation Plan.

47.     At the time of the settlement with the Hawthorne Entities, and as a result of the compromise, the Estate Representative reasonably believed that he would be able to pay all other holders of Class 5 claims in full (*i.e.,* 100 cents on the dollar).   Accordingly, after notice and hearing, the Court entered a Stipulation and Agreed Order memorializing and approving the settlement on November 26, 2013 [Docket No. 590].

**4.     Objections to Claims filed by the IRS and IBT**

48.     After the Confirmation Date, in addition to his successful resolution of the DCEO Claim, the ITP Claim and the Hawthorne Claims, the Estate Representative resolved and/or prosecuted objections to the claims filed by the Town of Cicero (withdrawn per Docket No. 443), the IBT Local 727 Benefit Funds (disallowed in its entirety per Docket No. 592) and the Internal Revenue Service (reduced by approximately $28,000.00 to less than $5,000 per amended Claim No. 5-3).

49.     The Estate Representative has thus concluded the claim objection process and made disbursements to all Class 5 general unsecured claims as provided in the Liquidation Plan.

**F.     REMAINING ASSETS OF THE ESTATE**

50.     After the Confirmation Date the Estate Representative continued the liquidation of assets of the estate, including obtaining payments from Race Tech, LLC pursuant to that certain prepetition Usage Agreement (the "Race Tech Receivables"), and negotiating the release of funds maintained in an Escrow Account at Chicago Title arising out of the prepetition sale of certain real property of the Debtor located in Cicero Illinois.

51.     There currently exist only limited additional assets of estate that require liquidation.  Specifically, the Estate Representative is currently seeking a buyer for the Debtor's

right and interest in future payment of the Race Tech Receivables; and to liquidate the Debtor's

minority equity interests in Printing Specialties, Inc. and WorldWide Broadcasting Systems, Inc.

52.    The Estate Representative submits that he may complete the liquidation of the

remaining assets pursuant to the authority granted to him under the Liquidation Plan and

understands that no further approval of the Court is required.

## G.    DOCUMENT DESTRUCTION AND RETENTION

53.    Pursuant to a motion filed by the Estate Representative, on July 28, 2011, the

Court entered that certain order Order Granting Debtor's Motion to Abandon Certain Books and

Records [Docket No. 430].  Pursuant thereto, certain documents, files and records of the estate

that related to the Debtor's operations with the Chicago Motor Speedway, and that had

previously been maintained while the Ganassi Suit was pending, were destroyed.

54.    The Estate Representative will continue to evaluate the remaining voluminous

business records of the Debtor and destroy the records for which there is no continuing need

related to the liquidation and wind-down process.  In conjunction with this process the Estate

Representation will continue to preserve and store all records and documents of the Debtor that

must be maintained to effectuate his remaining obligations and duties under the Liquidation

Plan, and to file a final tax return for the Debtor.

## H.    TREATMENT OF CLAIMS AND DISTRIBUTIONS TO DATE

55.    In summary, the Liquidation Plan provides for treatment of the classes of claims

as follows:

| CLAIMS | TREATMENT [PAYMENT] |
|---|---|
| Class 1 – All priority non-tax claims | Unimpaired [paid in full] |
| Class 2 – Allowed secured claim of DII | Impaired as to payment; balance treated as subordinated Class 6 Claim [to date paid consistent with the sharing arrangement set forth in the Global Settlement Agreement] |
| Class 3 – Bidwill secured claim | Impaired as to payment [partial payment made from the |

| CLAIMS | TREATMENT [PAYMENT] |
|---|---|
| | "Apartment Sale Proceeds"]; balance treated as subordinated Class 6 Claim |
| Class 4 – All other secured claims | Unimpaired [paid in full] |
| Class 5 – General unsecured claims | Impaired [paid in full from the "Set Aside" and the Estate's Share] |
| Class 6 – Subordinated claims | Impaired [potentially paid *pro rata* from remaining assets of the estate after payment of costs and administration] |
| Class 7 – Untimely claims | Impaired [no payment] |

In addition, all "Administrative Claims" and all "Priority Tax Claims" (as defined in the Liquidation Plan) were paid in full.

56.     As detailed above, the Estate Representative successfully prosecuted a series of claim objections to various Class 5 claims, which objections were eventually resolved through settlement, the appropriate motions and/or orders of this Court.

**I.     PRESENT STATUS OF CASE - RELIEF REQUESTED**

57.     The Estate Representative required significant involvement by this Court to complete the claim objection process.  As a result of this process, and not including the withdrawal of the $28 million Ganassi Claim, the Estate Representatives reduced the universe of general unsecured claims from an excess of $20 million down to approximately $1.3 million.

58.     In turn the Estate Representative was able to pay all Class 5 general unsecured claims *in full*, "one hundred cents on the dollar."

59.     The Estate Representative has successfully liquidated the vast majority of the estate assets.  Given the substantial progress made to date with respect to limited remaining assets, and the conclusion of the claim objection process, the Estate Representative believes that no reason exists to keep the Chapter 11 Case open.  All adversarial matters, pleadings, motions (contested or otherwise) have been resolved and the Estate Representative does not foresee any further issues that may require the involvement of this Court.

60.     The only potential remaining distributions under the Liquidation Plan, if any, will go to holders of subordinated Class 6 Claims  on a *pro rata* basis.  It is unclear at this time whether the remaining assets of the estate can be liquidated in amount sufficient to cover the remaining costs of liquidation and administration of the estate and thereby provide a distribution to holders of Class 6 Claims.

61.     Finally, the Estate Representative is current with all quarterly reporting requirements (with respect to both plan payment and disbursement reports) and has made all quarterly payments to the Office of the U.S. Trustee consistent with 28 U.S.C. § 1930(a)(6) through and including the fourth quarter of 2013.  In advance of the hearing on this Motion the Estate Representative will file a U.S. Trustee Quarterly Fee Statement to cover all disbursements made during the first quarter 2014 and will remit all payments required as a result of such disbursements.

62.     Rule 3022 of the Bankruptcy Rules provides that "After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bank. P. 3022.

63.     The official Advisory Committee Notes to the 1991 Amendments to Bankruptcy 3022 recommends that:

> [t]he entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed.  Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

The balance of these factors favors the entry of a final decree in the Chapter 11 Case.

64.     Specifically, the order of confirmation for the Liquidation Plan has become final; payments called for under the Liquidation Plan have commenced and are largely complete; only potential distributions to holders of Class 6 subordinated claims remain; all claim objections have been resolved; and no motions, contested matters, and adversary proceedings are currently pending before the Court.  Based on the foregoing, the Estate Representative submits that the estate has been fully administered and that the entry of a final decree is warranted.

65.     Rule 3022-1 of the Local Rules requires that the party moving to enter a final decree after confirmation of a chapter 11 plan must, unless the court orders otherwise, (a) state within the notice or the motion the actual status of payments due to each class under the confirmed plan, and (b) give notice of the motion to the United States Trustee and to all creditors.

66.     In compliance with the Local Rules, the Estate Representative has (i) provided all necessary disclosures in this Motion, and (ii) will provide a copy of the Motion and 13-day written notice of the hearing on this Motion to the office of the United States Trustee, all creditors (directly or through counsel who have filed an appearances in the case), the required ECF/CM notice parties, and all counsel of record, as reflected on a certificate of service on file herewith.  Movant requests that said notice be deemed adequate and that no further notice be required.

WHEREFORE, Jeffrey W. Krol, solely in his capacity as disbursing agent and estate representative, movant herein, prays for the entry of an order in the form provided herewith in accordance with the foregoing recommendations and for such other and further relief as is just.

Respectfully submitted,

JEFFREY W. KROL,
Estate Representative and Disbursing Agent

By:___/s/ Nathan Q. Rugg_____
One of his Attorneys

NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
312/435-1050
**Attorneys for the Estate Representative**